McGOON v. NORTHERN PAC. RY. CO.   COOK v. SAME.
LITTLER v. SAME.

(District Court, D. North Dakota, S. E. D.   May 14, 1913.)

1. REMOVAL OF CAUSES (§ 19*)—JURISDICTION OF FEDERAL COURT—SUIT ARISING UNDER INTERSTATE COMMERCE ACT.

A suit by a shipper against a railroad company to recover for damage or injury to property while being transported in interstate commerce is one arising under Interstate Commerce Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169), as amended by Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1911, p. 1307), of which a federal District Court is given original jurisdiction by Judicial Code (Act March 3, 1911, c. 231) § 24, par. 8, 36 Stat. 1092 (U. S. Comp. St. Supp. 1911, p. 136), which confers jurisdiction on such courts of all suits and proceedings arising under any law regulating commerce, except those of which the Commerce Court is given exclusive jurisdiction, and such a suit is removable under section 28, without regard to the amount involved.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 37–46, 48, 52, 53; Dec. Dig. § 19.*]

2. COURTS (§ 284*)—JURISDICTION OF FEDERAL COURTS—SUIT ARISING UNDER FEDERAL LAW.

Whenever federal law grants a right of property or of action, and a suit is brought to enforce that right, it is one which may properly turn upon a construction of that law, and such suit arises under the law for the purposes of federal jurisdiction, notwithstanding the defendant may raise only issues of fact by his answer.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820–826, 831; Dec. Dig. § 284.*]

At Law.   Actions by Richard F. McGoon, by J. W. Cook, and by J. M. Littler against the Northern Pacific Railway Company.   On motions to remand to state court.   Motions denied.

W. S. Lauder, of Wahpeton, N. D., for plaintiffs.
Edw. T. Conmy, of Fargo, N. D., for defendant.

AMIDON, District Judge.   The plaintiffs brought six separate actions against the defendant in the district court of Richland county, N. D.   They are all based upon shipments of live stock from Western North Dakota and Eastern Montana, to Chicago, Ill.   Each complaint

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

embraces several causes of action, but the principal ground of recovery is alleged damage to the live stock by reason of defendant's failure to perform its duty as a common carrier. The suits were removed into this court upon the ground that they arise under the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]). In neither case does the plaintiff seek to recover $3,000, and motion is now made to remand the suits to the state court because the amount in controversy is less than the sum required to justify their removal, and also because they do not involve a federal question.

[1] Section 24 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1091 [U. S. Comp. St. Supp. 1911, p. 135]) specifies the suits of which the District Courts are given original jurisdiction. Subdivision 1 of that section ends with the following proviso:

"Provided, however, that the foregoing provision as to the sum or value of the matter in controversy shall not be construed to apply to any of the cases mentioned in the succeeding paragraphs of this section."

Subdivision 8, which follows this proviso, enacts that the District Courts shall have original jurisdiction—

"* * * of all suits and proceedings arising under any law regulating commerce, except those suits and proceedings exclusive jurisdiction of which has been conferred upon the Commerce Court."

It is claimed by the defendant that these actions are suits "arising under a law regulating commerce," and for that reason may, under the proviso above quoted, be removed into the federal court, although they involve less than $3,000.

Defendant's liability arises wholly out of section 20 of the Interstate Commerce Act, as amended by Act June 29, 1906, c. 3591, § 7, 34 Stat. at Large, 584, 593 (U. S. Comp. St. Supp. 1911, p. 1307). Under the decision of the Supreme Court in Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. ——, that section abrogates all state and common-law liabilities on interstate shipments of property. If the statute does not give plaintiff a right of recovery, he has none. The court says, at pages 505 and 506 of 226 U. S., and page 152 of 33 Sup. Ct. (57 L. Ed. ——):

"That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue and limits his power to exempt himself by rule, regulation or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it. Only the silence of Congress authorized the exercise of the police power of the state upon the subject of such contracts. But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the state ceased to exist. Northern Pac. Ry. v. State of Washington, 222 U. S. 370 [32 Sup. Ct. 160, 56 L. Ed. 237]; Southern Railway v. Reid, 222 U. S. 424 [32 Sup. Ct. 140, 56 L. Ed. 257]; Mondou v. Railroad, 223 U. S. 1 [32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44].

"To hold that the liability therein declared may be increased or diminished by local regulation or local views of public policy will either make the pro-

vision less than supreme or indicate that Congress has not shown a purpose to take possession of the subject. The first would be unthinkable and the latter would be to revert to the uncertainties and diversities of rulings which led to the amendment. The duty to issue a bill of lading and the liability thereby assumed are covered in full, and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject."

The statute referred to is a part of the Interstate Commerce Act. It is not only incorporated in its language, but is germane to its subject. It relates to interstate commerce in its most primary sense— the transportation of property from one state to another. It stands side by side with section 8 of that act, which gives to persons injured by rebates and unjust discriminations the right to recover damages therefor. It is, therefore, a "law regulating commerce," within the meaning of subdivision 8 of section 24 of the Judicial Code.

Do the suits "arise under" section 20 of the Interstate Commerce Act? These words are found in the judicial article (article 3) of the federal Constitution, were used in the original Judiciary Act of 1789 (Act Sept. 24, 1789, c. 20, 1 Stat. 73), and have been a part of all subsequent statutes defining the jurisdiction of federal courts. Few subjects, however, are involved in greater perplexity than their meaning. Many criteria have been laid down for determining when a suit arises under federal law. They can be classified, but they cannot be harmonized. In the language of Chief Justice Marshall, a case "may truly be said to arise under the Constitution or a law of the United States, whenever its correct decision depends on the construction of either" (Cohens v. Virginia, 6 Wheat. 379, 5 L. Ed. 257); or when "the title or right, set up by the party, may be defeated by one construction of the Constitution or law of the United States, and sustained by the opposite construction" (Osborn v. Bank of United States, 9 Wheat. 822, 6 L. Ed. 204). And yet in the latter case it was held that a suit by or against a federal corporation was one arising under federal law—a doctrine which has since been adhered to by the Supreme Court. Pacific R. R. Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319. It would, however, be difficult to conceive a case less likely to involve a construction of federal law than the ordinary suit by or against a federal corporation. A suit by or against a receiver of a national bank (Bartley v. Hayden [C. C.] 74 Fed. 913), or a receiver appointed by a federal court (Central Trust Co. v. East Tenn. V. & G. Ry. Co. [C. C.] 69 Fed. 353; State of Washington v. Northern Pacific R. Co. [C. C.] 75 Fed. 333), arises under the Constitution and laws of the United States, although as a rule such suits in no way involve a controversy as to the meaning of the federal Constitution or law. Suits to protect the rights of patentees under federal law are held to arise under the Patent Law, although many, possibly most, of them turn wholly upon questions of fact.

Counsel calls attention to the following language in Defiance Water Co. v. Defiance, 191 U. S. 184, 190, 24 Sup. Ct. 63, 66 (48 L. Ed. 140):

"When a suit does not really and substantially involve a dispute or controversy as to the effect or construction of the Constitution or laws of the United States, upon the determination of which the result depends, it is not a suit arising under the Constitution or laws. And it must appear on the record, by a statement in legal and logical form, such as is required in good pleading, that the suit is one which does really and substantially involve a dispute or controversy as to a right which depends on the construction of the Constitution or some law or treaty of the United States before jurisdiction can be maintained on this ground."

Similar language has been used in other decisions. An examination of these cases, however, will generally show that the right asserted in the complaint was not a right created by federal law. On the contrary, such law was only indirectly and remotely concerned, and the right immediately in litigation was created by state law. Such were Gold Washing & Water Co. v. Keyes, 96 U. S. 199, 24 L. Ed. 656, and Shoshone Mining Co. v. Rutter, 177 U. S. 505, 20 Sup. Ct. 726, 44 L. Ed. 864. When the complaint discloses such a case, it becomes affirmatively clear that the suit does not arise out of federal law, and not only does not, but cannot properly, present a controversy as to the meaning of such law.

It cannot be that the jurisdiction of a suit originally brought in the District Court, or removed thereto, on the ground that it arises under the federal Constitution or law, must depend upon whether in the actual trial of the case a controversy will arise as to the effect or construction of the federal Constitution or law. That must be so, because it never can be determined from the complaint alone, upon which such jurisdiction is entirely dependent (Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511), that the case will actually involve a controversy as to the meaning of the federal Constitution or law. What controversy the case will present necessarily depends upon the issue raised by the answer. Though plaintiff bases his right upon federal law, the defendant may concede the law and the interpretation thereof asserted by the plaintiff, and raise only issues of fact.

[2] So far as I am aware, the following is a correct affirmative rule: Whenever federal law grants a right of property or of action, and a suit is brought to enforce that right, such a suit arises under the law creating the right, within the meaning of statutes defining the jurisdiction of federal courts. This has been frequently declared by the Supreme Court:

"Cases arising under the laws of the United States are such as grow out of the legislation of Congress, whether they constitute the right or privilege, or claim or protection, or defense of the party, in whole or in part, by whom they are asserted." Tennessee v. Davis, 100 U. S. 257, 264 (25 L. Ed. 648).

Shoshone Mining Co. v. Rutter, 177 U. S. 505, 20 Sup. Ct. 726, 44 L. Ed. 864, is a leading authority on this subject. It was an adverse suit to determine the right of possession to a mining claim. The suit was authorized by section 2326 of the Revised Statutes (U. S. Comp. St. 1901, p. 1430), but the right which it was to determine was not

created by federal law. On the contrary, that right was dependent upon state statutes, and the local customs and rules of miners in the several mining districts. Because the right was not created by federal law, it was held that the case was not a suit arising under a law of the United States. The case, as Mr. Justice Brewer says, is a close one. In pointing out the distinction which determined the decision, the learned justice uses the following accurate language (177 U. S. at page 510, 20 Sup. Ct. at page 728, 44 L. Ed. 864):

"A statute authorizing an action to establish a right is very different from one which creates a right to be established. An action brought under the one may involve no controversy as to the scope and effect of the statute, while in the other case it necessarily involves such a controversy, for the thing to be decided is the extent of the right given by the statute."

The whole reasoning of the opinion shows clearly that, if the right of possession which the suit was brought to determine had been created by federal law, the case would then have been a suit arising under a law of the United States.

Swafford v. Templeton, 185 U. S. 487, 22 Sup. Ct. 783, 46 L. Ed. 1005, was an action brought to recover damages for the wrongful refusal by the defendants to permit the plaintiff to vote at a national election for a member of the House of Representatives. The trial court dismissed the action for want of jurisdiction, holding that it did not arise under the federal Constitution or law. The Supreme Court reversed the decision, holding that, as the right asserted was created by federal law, the suit was necessarily one arising under such law. The court said:

"It results from what has just been said that the court erred in dismissing the action for want of jurisdiction, since the right which it was claimed had been unlawfully invaded was one in the very nature of things arising under the Constitution and laws of the United States, and that this inhered in the very substance of the claim."

The meaning of this language is made still plainer when the court points out later in the opinion the difference between such a case and a writ of error from the Supreme Court of the United States to review the judgment of the highest court of a state, in which a federal right has been claimed and denied by the state court. To support such a review, it must appear that a federal right was actually claimed in the trial of the action, and denied by the state court. In such a case the federal jurisdiction arises only after the case has passed to final judgment. There it is possible to see just what questions are actually litigated. On the other hand, the jurisdiction of the Circuit or District Courts of the United States in a suit brought in those courts, or removed thereto, must be disclosed on the face of the complaint. As to such a jurisdiction, it is, of course, impossible to ascertain whether there will in fact be at the trial a controversy as to the construction of the Constitution or laws of the United States. Speaking to that point the court says:

"But the doctrine referred to has no application to a case brought in a federal court where the very subject-matter of the controversy is federal, however much wanting in merit may be the averments which it is claimed

establish the violation of the federal right. The distinction between the cases referred to and the one at bar is that which must necessarily exist between controversies concerning *rights which are created by the Constitution or laws of the United States, and which consequently are in their essence federal,* and controversies concerning rights not conferred by the Constitution or laws of the United States, the contention respecting which may or may not involve a federal question depending upon what is the real issue to be decided or the substantiality of the averments as to the existence of the rights which it is claimed are federal in character."

In that case it will be noticed that it was impossible to say from the complaint whether its trial would in fact turn upon the interpretation of the Constitution or laws of the United States. The defendants, while admitting plaintiff's contention as to the law, might have denied the charge that they had deprived the plaintiff of his federal franchise, and thus the case would have turned wholly on a question of fact.

The Supreme Court, in Macon Grocery Co. v. Atlantic Coast Line, 215 U. S. 501, 508, 30 Sup. Ct. 184, 187 (54 L. Ed. 300), held that a suit to enforce a right conferred by the Interstate Commerce Law was a suit arising under that law, and declared the reason for that interpretation in the following language:

"The object of the bill was to enjoin alleged unreasonable rates, threatened to be exacted by carriers subject to the act to regulate commerce. The right to be exempt from such unlawful exactions is one protected by the act in question, and the purpose to avail of the benefit of that act, as well as of the Anti-Trust Act, is plainly indicated by the averments of the bill. *Of necessity, in determining the right to the relief prayed for, a construction of the act to regulate commerce was essentially involved."*

If we press the doctrine to the full extent of the language used in some opinions (as was done in Leggett v. G. N. Ry. Co. [C. C.] 180 Fed. 314, and Nelson v. Southern Ry. Co. [C. C.] 172 Fed. 478), we wholly nullify the statute. Jurisdiction upon the ground that the case arises under the Constitution or laws of the United States cannot be shown by the answer or petition for removal, or by averments in the complaint as to the issue which the defendant will raise by his answer. Louisville & Nashville R. R. Co. v. Mottley, 211 U. S. 149, 29 Sup. Ct. 42, 53 L. Ed. 126; Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511; Arkansas v. Kansas & Texas Coal Co., 183 U. S. 185, 22 Sup. Ct. 47, 46 L. Ed. 144. That jurisdiction must be shown wholly by plaintiff's statement of his own cause of action. Every such cause of action, however, is made up of matters of fact as well as law, and it must be entirely plain that the plaintiff by his statement of his own cause of action cannot show whether the defendant will take issue as to matters of fact or matters of law, and it is therefore impossible for the plaintiff to show by his complaint that the case will "really and necessarily involve a dispute or controversy as to a right which depends on the construction of the Constitution or some law or treaty of the United States." It necessarily follows that such a rule, if pressed to the extreme point for which plaintiff contends, would wholly destroy jurisdiction under this head, by prescribing conditions with which no plaintiff can ever com-

ply. Congress, however, has declared that the District .Court shall have jurisdiction of cases arising under the Constitution and laws of the United States. This language is plain, and ought not to be wholly nullified by a process of reasoning which professes to ascertain its meaning. An interpretation which leads to such absurd results must be wrong.

What, then, do the courts mean when they say that the construction of federal law must be involved in order to confer this jurisdiction? Certainly not that the case will necessarily turn upon an interpretation of the statute, but simply that the complaint must set forth a cause of action of which federal law is an essential ingredient, and which may, therefore, properly involve a construction of that law. Chief Justice Marshall pointed this out in Osborn v. United States Bank, 9 Wheat. 738, 823 (6 L. Ed. 204):

"The question forms an original ingredient in every cause. Whether it be, in fact, relied on or not, in the defense, it is still a part of the cause, and may be relied on. The right of the plaintiff to sue, cannot depend on the defense which the defendant may choose to set up. His right to sue is anterior to that defense, and must depend on the state of things when the action is brought. The question which the case involved,. then, must determine its character, whether those questions be made in the cause or not. * * * The act itself is the first ingredient in the case—is its origin—is that from which every other part arises."

A suit brought to enforce a right granted by federal law must have that law as its foundation. The particular suit may turn upon questions of fact. The right, nevertheless, arises out of the law. This distinction is made plain in· numerous patent cases. See The Fair v. Kohler Die & Specialty Co., 228 U. S. 22, 25, 33 Sup. Ct. 410, 57 L. Ed. ——. Whenever the plaintiff bases his right directly upon the patent, the case arises under the Patent Law, and the federal courts have jurisdiction. This is true, notwithstanding the litigation may turn wholly upon questions of fact. If the case does not assert a right granted by the Patent Law, but is simply based on a contract affecting a patent, it does not arise out of the Patent Law, and the federal courts are without jurisdiction. There has never been any controversy about the rule, although serious difficulty has been experienced in its application. See prevailing and dissenting opinions in Henry v. A. B. Dick Co., 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645. The same rule has been applied in regard to rights asserted under the federal land laws. Whenever the complaint directly asserts a right growing out of those laws, the federal courts have jurisdiction. Kansas Pacific R. R. Co. v. Atchison R. R., 112 U. S. 414, 5 Sup. Ct. 208, 28 L. Ed. 794; Florida C. & P. R. Co. v. Bell et al., 87 Fed. 369, 31 C. C. A. 9; McCune v. Essig, 199 U. S. 382, 26 Sup. Ct. 78, 50 L. Ed. 237.

The national courts had jurisdiction of all actions under the federal Employer's Liability Act until that jurisdiction was restricted by section 6 of the act of April 5, 1910. Watson v. St. Louis, I. M. & S. Ry. Co. (C. C.) 169 Fed. 942; Hall v. Chicago, R. I. & P. Ry. Co. (C. C.) 149 Fed. 564; Van Brimmer v. Texas & P. Ry. Co. (C. C.) 190. Fed. 394, 398. Contra: Leggett v. G. N. Ry. Co. (C. C.) 180 Fed. 314.

Congress recognized the existence of this jurisdiction, and enacted section 6 for the purpose of restricting it. Symonds v. St. Louis & S. E. Ry. Co. (C. C.) 192 Fed. 353, 355; De Atley v. C. & O. Ry. Co. (D. C.) 201 Fed. 591, 596; Rice v. B. & M. R. R. Co. (D. C.) 203 Fed. 580.

It has been uniformly held that suits to recover damages under other sections of the Interstate Commerce Act are suits arising under that act in such a way as to confer federal jurisdiction. Tift v. Southern Ry. Co. (C. C.) 123 Fed. 789; Northern Pacific Ry. Co. v. Pacific, etc., Ass'n, 165 Fed. 1, 91 C. C. A. 39; Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co. (C. C.) 54 Fed. 730, 19 L. R. A. 387; Macon Grocery Co. v. Atlantic Coast Line, 215 U. S. 501, 30 Sup. Ct. 184, 54 L. Ed. 300. See, also, A., T. & S. F. Ry. Co. v. Kinkade (D. C.) 203 Fed. 165.

The line of distinction which it seems to me will go far to harmonize the cases is this: When the complaint shows a case which arises out of a contract or a common-law right of property, and only indirectly and remotely depends on federal law, such a case not only does not, but cannot properly, turn upon a construction of such law. But when the complaint asserts a right created by federal law, it presents a suit which *may properly* turn upon a construction of that law; and such a suit "arises out of" the law for purposes of federal jurisdiction, notwithstanding the defendant may raise only issues of fact by his answer.

Counsel is mistaken when he says that plaintiff's right arises out of the contract of shipment. The statute fixes the liability of the carrier and declares that:

"No contract, receipt, rule or regulation shall exempt the carrier from the liability hereby imposed."

The conclusion seems to me irresistible that the present suits arise under section 20 of the Interstate Commerce Act, and are, therefore, suits of which the federal courts would have had original jurisdiction, and were for the same reason properly removed under section 28 of the Judicial Code.

The motions to remand will therefore be denied.